UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RASHAD B. THOMPSON,

      Plaintiff,

v.                                            Case No: 6:16-cv-1996-Orl-40TBS

DANIEL GUTIERREZ and TITUSVILLE
POLICE DEPARTMENT,

      Defendants.

_____

## REPORT AND RECOMMENDATION

This case comes before me on Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs, which I construe as a motion for leave to proceed *in forma pauperis* (Doc. 7). Upon due consideration I respectfully recommend that the motion be **denied** and this case be **dismissed** without leave to amend.

### Discussion

An individual may be allowed to proceed *in forma pauperis* if he declares in an affidavit that he "is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a)(1). Before a plaintiff is permitted to proceed *in forma pauperis*, the Court is obligated to review the complaint to determine whether it is frivolous, malicious, "fails to state a claim upon which relief may be granted[,]" or ... "seeks monetary relief against a defendant who is immune from such relief." Id. § 1915(e)(2). If the complaint is deficient, the Court is required to dismiss the lawsuit *sua sponte*. See id.

Federal district courts are courts of limited jurisdiction. As a general matter, an action must be dismissed if the Court lacks subject matter jurisdiction. See Steel Co. v. Citizens for a Better Env't., 523 U.S. 83, 94 (1998). Parties seeking to invoke a federal

district court's jurisdiction must show that the underlying claim is based upon either diversity jurisdiction[1] or the existence of a federal question (i.e "a civil action arising under the Constitution, laws, or treaties of the United States"). See 28 U.S.C. §§ 1331-1332. A federal district court "has the obligation to review sua sponte whether it has subject matter jurisdiction" and if jurisdiction is found to be lacking, the court cannot proceed, and its sole remaining duty is to state that it lacks jurisdiction and dismiss the case. Fla. Wildlife Fed'n., Inc. v. S. Fla. Water Mgmt. Dist., 647 F.3d 1296, 1302 (11th Cir. 2011).

Plaintiff must also sufficiently plead the elements required for each cause of action alleged. "A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Detailed factual allegations are not required, but a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 554, 555 (2007)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).

Although district courts apply a "less stringent standard" to the pleadings submitted by a pro se plaintiff, even pro se litigants must allege the essential elements of their claims for relief. See Eidson v. Arenas, 910 F. Supp. 609, 612 (M.D. Fla. 1995) (citations omitted). The United States Supreme Court has observed that "a litigant whose filing fees and court costs are assumed by the public ... lacks an economic incentive to refrain from

---

[1] Federal diversity subject matter jurisdiction exists where the matter in controversy (1) exceeds the sum or value of $75,000 exclusive of interest and costs and (2) is between citizens of different states. See 28 U.S.C. § 1332(a).

filing frivolous, malicious, or repetitive lawsuits." Neitzke v. Williams, 490 U.S. 319, 324 (1989). Still, the Supreme Court cautions that a case should only be dismissed as frivolous if it relies on meritless legal theories or facts that are clearly baseless. See id. at 327.

On November 14, 2016, Plaintiff filed a complaint against Defendants for alleged violations of 42 U.S.C. § 1983 (Doc. 1). Plaintiff claims that he was injured by Defendants when they illegally intercepted, recorded, and disseminated a phone call between his father, Ricardo D. Thompson and a minor female on March 7, 1997 (Doc. 1 at 9). Plaintiff alleges that the record of the phone call was used to arrest his father on sex abuse charges in Illinois in May, 1997 (Id.). Plaintiff concedes that his father's counsel did not challenge the legality of the phone call interception and a Florida state-court judge found the recording admissible at trial (Id.). Plaintiff maintains that he was 22 months old when his father was convicted and now sues for loss of consortium under Section1983. Although the Court is sympathetic to Plaintiff's position, his complaint is deficient for a number of reasons, any one of which is sufficient grounds upon which to base dismissal.

1. Plaintiff Lacks Standing To Bring This Lawsuit

"[S]tanding is a threshold test that, if satisfied, permits a federal court to proceed to the question of whether a plaintiff has a cause of action." Florida Ass'n of Med. Equip. Dealers v. Apfel, 194 F.3d 1227, 1230 (11th Cir. 1999); see also Access for the Disabled, Inc. v. Square, LLC, Case No. 6:07-cv-193-Orl-28JGG, 2007 U.S. Dist. LEXIS 99118, at *3-4 (M.D. Fla. Oct. 4, 2007) (A standing inquiry invokes FED. R. CIV. P. 12(b)(1) because "standing is a defect in subject matter jurisdiction."). In determining whether a plaintiff has standing, a district judge must consider many factors. Foremost is whether the plaintiff suffered "an invasion of a legally protected interest," otherwise known as an "injury in

fact." <u>Doe v. Pryor</u>, 344 F.3d 1282, 1285 (11th Cir. 2003) (quoting <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992)).

By suing Defendants over their involvement in the interception and dissemination of the phone call and the resulting arrest of his father, Plaintiff is in reality challenging his father's conviction (Doc. 1 at 12-13). Plaintiff has not demonstrated that any action taken by either of the Defendants caused him injury in fact sufficient to establish his own standing. Plaintiff attempts to conflate his claim with what he anticipates would be a cause of action his father would raise under the circumstances. For example, he alleges that Defendants are liable for violating his "civil rights under 42 U.S.C. § 1983 for consequential, compensatory, and punitive damages exceeding $1 million ..." (<u>Id.</u> at 8). He even refers to his father as "Plaintiff" numerous times throughout his complaint (<u>Id.</u> at 1, 9, 11, 15). Despite his averments, Plaintiff lacks standing to challenge his father's conviction. Thus, Plaintiff is unable to allege a basis for standing that is adequate to sustain a cause of action in this Court.

    2.  <u>Plaintiff Has Failed to Allege a Section 1983 Claim</u>

Plaintiff's complaint fails to allege facts sufficient to state a cognizable cause of action within the jurisdiction of this Court. Section 1983 established a federal cause of action for damages against those who, acting under color of state law, deprive or cause the deprivation of the federal rights of any citizen or other person under their jurisdiction. 42 U.S.C. § 1983. The purpose of § 1983 "is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." <u>Wyatt v. Cole</u>, 504 U.S. 158, 161 (1992) (citing <u>Carey v. Piphus</u>, 435 U.S. 247, 254–57 (1978)). **Section 1983 is a vehicle for vindicating federal rights elsewhere conferred, it does not create new substantive rights.** <u>Baker v.</u>

McCollan, 443 U.S. 137, 144 n. 3 (1979). The Court must therefore consider the specific federal rights Plaintiff claims he was deprived of by Defendants. In other words, the viability of Plaintiff's § 1983 claim hinges on the sufficiency of his constitutional and other federal claims. Plaintiff attempts to ground his § 1983 claim in a cause of action for loss of consortium (Doc. 1 at 5, 8, 13-14), but he has failed to provide a statutory basis for his entitlement to this right. Regardless of whether Plaintiff provides a statutory basis for his allegations, his cause of action still dies because loss of consortium claims generally, are state-based claims and cannot serve as the foundation of a federal claim under 42 U.S.C. § 1983.

    3.  The Case Violates the Rooker-Feldman Doctrine

    The Rooker-Feldman doctrine provides that lower federal courts lack jurisdiction to review final judgments of state courts. The doctrine takes its name from two Supreme Court cases in which it was applied. See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). In Rooker, the plaintiffs brought suit in federal district court seeking to have a state court judgment, which had been affirmed by the state's highest court, "declared null and void" on the grounds that it violated the United States Constitution. 263 U.S. at 414-15. The district court dismissed the suit for lack of jurisdiction and on appeal, the Supreme Court affirmed. Id. at 415. The Supreme Court emphasized that state courts are competent to decide issues of federal law that happen to arise in proceedings within their jurisdiction, and any mistakes the state court happened to make in resolving federal questions "did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding." Id. Congress granted the Supreme Court, among the federal courts, exclusive appellate jurisdiction over state court decisions. Id. at

416, <u>see also</u> 28 U.S.C. § 1257 (vesting certiorari jurisdiction over state court judgments in Supreme Court). The Supreme Court held that the suit, which was "merely an attempt to get rid of the judgment for alleged errors of law committed in the exercise of [the state courts'] jurisdiction," was not within the "strictly original" jurisdiction of federal district courts. <u>Rooker</u>, 263 U.S. at 416.

In <u>Feldman</u>, the District of Columbia Court of Appeals rejected petitions from two applicants for admission to the District of Columbia bar. The applicants asked the court to waive its rule that all attorneys admitted to practice in the District must have graduated from an accredited law school. 460 U.S. at 466-67, 472. They sued in federal district court seeking a declaration that the denial of their petitions violated the Fifth Amendment to the Constitution and the Sherman Act. <u>Id.</u> at 468-69, 72-73. Their complaints raised both facial challenges to the D.C. rule and challenges to the court's failure to waive the rule as applied to them.   <u>Id.</u> at 469 n. 3. The Supreme Court began its analysis by reiterating the rule it established in <u>Rooker</u>, that district courts lack authority "to review final determinations" of state courts. <u>Id.</u> at 476; <u>see also</u> 28 U.S.C § 1257(b) (providing that the District of Columbia Court of Appeals is "the highest court of a State" for purposes of the Supreme Court's certiorari jurisdiction over state court judgments). It then held that the D.C. bar admission proceedings were judicial in nature, so that under the rule set forth in <u>Rooker</u>, the federal district courts could not entertain an action amounting to an appeal of the D.C. court's orders.   <u>Feldman</u>, 460 U.S. at 476–82.

In applying the <u>Rooker</u> rule to the bar applicants' claims, the Supreme Court drew a distinction between their claims that the D.C. court violated their constitutional rights in refusing to grant a waiver and their facial challenges to the D.C. rule. <u>Id.</u> at 482-83. The district court lacked jurisdiction to consider the applicants' arguments that the D.C. court's

denial of their petitions was unreasonable and discriminatory or arbitrary and capricious, because "[t]hese allegations are inextricably intertwined with the [D.C. court's] decisions, in judicial proceedings, to deny the [applicants'] petitions." Id. at 486-87. But, because the applicants' "general challenge to the constitutionality" of the D.C. rule did "not require review of a judicial decision in a particular case," the district court had jurisdiction over those claims.   Id. at 483, 487.

The Supreme Court revisited the Rooker-Feldman doctrine in Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005). Exxon Mobil involved a dispute between ExxonMobil Corp. and Saudi Basic Industries Corp. ("SABIC") over royalties charged by SABIC to joint ventures between SABIC and two of ExxonMobil's subsidiaries. Id. at 289. In July 2000, SABIC sued ExxonMobil in Delaware state court seeking a declaratory judgment that the royalties were proper. Id. Two weeks later, ExxonMobil sued SABIC in federal district court in New Jersey, alleging that SABIC overcharged the joint ventures. Id. In January 2002, ExxonMobil answered SABIC's state-court complaint and pled as counterclaims the same claims it had asserted in the federal action. Id. SABIC moved to dismiss the federal case, arguing that it was immune under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602 et seq.   Id. at 289-90. The district court denied SABIC's motion, and SABIC took an interlocutory appeal to the United States Court of Appeals for the Third Circuit. Id. at 290. Meanwhile, in March 2003, the state court action went to trial, where a jury awarded ExxonMobil a verdict of over $400 million. Id. The Third Circuit then remanded SABIC's appeal with instructions to dismiss, holding that the federal district court no longer had subject matter jurisdiction "because ExxonMobil's claims have already been litigated in state court." Id.

The Supreme Court reversed in a unanimous decision, holding that Rooker-Feldman did not "vanquish" the district court's jurisdiction after the state court entered judgment. Id. at 294. In its opinion, the Supreme Court expressed disapproval of what it viewed as a trend in the lower courts of expanding the Rooker-Feldman doctrine "far beyond the contours of the Rooker and Feldman cases." Id. at 283. Rooker-Feldman, the Supreme Court said, "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Id. at 284. Rooker-Feldman does not divest federal district courts of jurisdiction "[w]hen there is parallel state and federal litigation" and the state court enters judgment first. Id. at 292. Nor, the Supreme Court explained, does it apply simply because a party "attempts to litigate in federal court a matter previously litigated in state court." Id. "If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." Id. at 293 (internal quotations and citations omitted).

As the Supreme Court explained in Exxon Mobil, the Rooker-Feldman doctrine applies when (1) the plaintiff lost in state court; (2) the plaintiff complains about an injury "caused by the state-court judgment[]"; (3) the state-court case ended before the plaintiff brought the federal case; and (4) the plaintiff "invite[s]" the federal court to "review or reject[]" the state court judgment. 544 U.S. at 284.

By challenging the legality of the interception, recordation, and dissemination of the telephone call, Plaintiff is asking this Court to overturn the admissibility ruling of the

state trial court, which runs afoul of the <u>Rooker</u>-<u>Feldman</u> doctrine. On April 30, 1999, the Florida Fifth District Court of Appeal (Antoon writing for the court), affirmed the evidentiary ruling of the circuit court that admitted the recording of the telephone call. <u>Thompson v. State</u>, 731 So. 2d 819 (Fla. 5th DCA 1999). The state appellate court concluded that the recording of the telephone conversation between the defendant and victim was admissible and the question of whether Illinois law governed admissibility was a moot point:

> A jury found Ricardo Thompson guilty of committing two counts of sexual battery upon a child less than twelve years of age and one count of committing a lewd, lascivious, or indecent assault upon a child less than sixteen years of age Mr. Thompson appeals his judgments and sentences contending the trial court erred in admitting into evidence a recording of a telephone conversation between himself and the victim. We affirm.

> The child victim told police that between October 1995 and December 1996 she had engaged in numerous sexual acts with Mr. Thompson while he was working as a minister at the Titusville Calvary Church of the Nazarene. The victim was eleven years' old when the first incident occurred and twelve years old on the date of the last incident. In December 1996, Mr. Thompson moved to Illinois.

> With the permission of the victim's mother and the victim, the police arranged to record telephone conversations between the victim and Mr. Thompson. The victim placed two calls from the police department to Mr. Thompson at his home and at his work. During both calls Mr. Thompson stated that he was unable to speak with the victim but that he would call her back later at her home. Mr. Thompson called the victim at home and during his conversation with her he made several incriminating statements. The statements indicated that he had engaged in numerous sexual acts with the victim, including sexual intercourse. The police recorded this conversation.

> The state later charged Mr. Thompson with seven counts of lewd, lascivious, or indecent acts upon a child less than sixteen years of age, and eight counts of sexual battery on a child less than twelve years of age. Mr. Thompson filed a

motion to suppress the telephone recording alleging the recording was inadmissible at trial because the police had failed to comply with an Illinois statute that requires notification to the Illinois State Attorney before such a recording is made. He argued that Illinois law governs the admissibility of this recording because the telephone call originated in Illinois. See State v. Mozo, 655 So.2d 1115, 1117 (Fla.1995) (holding that interception of an electronic communication occurs where the communication originates); see also United States v. Nelson, 837 F.2d 1519 (11th Cir.), cert. denied, 488 U.S. 829, 109 S.Ct. 82, 102 L.Ed.2d 58 (1988). According to Mr. Thompson, the state was barred from using the recording as evidence in his prosecution because the Titusville police department failed to give notice to the State Attorney in the county where Mr. Thompson lived that a telephone conversation between him and the victim was going to be recorded. The trial court denied the motion to suppress and the recording was played during Mr. Thompson's trial. We affirm.

The communication at issue here was recorded by a law enforcement officer with the consent of the victim as authorized by section 934.03(2)(c), Florida Statutes (1995) ...

. . . .

Importantly, the communication in the instant case was neither the result of a wire tap nor an interception of a cordless telephone conversation without consent, both of which implicate the right to privacy under Article I, section 23 of the Florida Constitution.

In closing, we also note that Mr. Thompson did not have a right to privacy in his telephone conversation with the victim because a " 'wrongdoer who voluntarily speaks to another of his wrongdoings, only has the hope or expectation, not a constitutionally protected right, that the other person will not breach his confidence....'

731 So. 2d at 819-821 (internal citations omitted).

All four requirements for the application of the Rooker-Feldman doctrine are plainly satisfied in this case: Plaintiff's father lost the state-court criminal case, and he has exhausted all possible appeals, thus ending the state court case, before Plaintiff filed this lawsuit. Plaintiff's alleged injury was caused by the state judgment convicting his father,

based at least in part, on the admission of the recording of the telephone call. Lastly, Plaintiff is inviting this Court to review and reject the judgment of the state court concerning the admissibility of the recording of the telephone call. Therefore, to the extent Plaintiff purports to challenge the final decision of the state trial court he violates the <u>Rooker-Feldman</u> doctrine and the case must be dismissed on this ground.

## Recommendation

The defects in Plaintiff's complaint are numerous, however, the three defects discussed above are all fatal to Plaintiff's cause of action. I am not persuaded that allowing him leave to amend would be fruitful. Accordingly, I respectfully recommend that the district judge **DENY** the pending motion to proceed *in forma pauperis* (Doc. 7) and **DISMISS** this case without leave to amend.

## Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. <u>See</u> 11th Cir. R. 3-1.

**Respectfully Recommended** in Orlando, Florida on March 27, 2017.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
*Pro se* Plaintiff